**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

GARY RENELIQUE,

                                          Plaintiff

            - v -                                              Civil No. 9:03-CV-1145
                                                                    (LEK/RFT)

JOSEPH F. DAVID, Superintendent, Greene Corr. Facility;
MELODY J. ELDRED, Deputy Superintendent, Greene Corr.
Facility; ROBERT K. WOODS, Superintendent of Security,
Greene Corr. Facility; GERALD KOTZIN, Doctor, Greene Corr.
Facility; LAURA A. PREBLE, Nurse Administrator, Greene
Corr. Facility; NURSE COLE, RN #246, Greene Corr. Facility;
KATHY CAVANAUGH, Unit Chief Mental Health, Coxsackie
Corr. Facility; JOAN GEREN, M.D., Psychiatrist, Greene Corr.
Facility; CORINA LOUBRIR, Mental Health Technician,
Coxsackie Corr. Facility; H.E. SMITH, Dir. of Mental Health,
Coxsackie Corr. Facility; C.O. LEMAY, Greene Corr. Facility;
WAYNE R. HOLT, C.O. Library Officer, Greene Corr. Facility;
MR. BERLIN, Grievance Supervisor, Greene Corr. Facility;
C.O. ROSENTHAL, Grievance Officer, Greene Corr. Facility;
CLARK WILSON, Deputy Superintendent of Programs, Greene
Corr. Facility; C.O. MOLESKY, Greene Corr. Facility; SERGEANT
MOORE, Greene Corr. Facility; C.O. HAMMER, Greene Corr.
Facility; C.O. LUBINSKY, Greene Corr. Facility; C.O. PETERSON,
Greene Corr. Facility; C.O. HOTALING, Greene Corr. Facility;
C.O. MOORE, Greene Corr. Facility; DIANE WARNER, I.R.C.,
Greene Corr. Facility; SERGEANT OVERBOUGH, Greene Corr.
Facility; LIEUTENANT ROBIANI, Greene Corr. Facility,

                                          Defendants.[1]

**APPEARANCES:**                                    **OF COUNSEL:**

GARY RENELIQUE
Plaintiff *Pro se*
99-A-0778
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. ELIOT SPITZER                                 STEVEN H. SCHWARTZ, ESQ.
Attorney General of the State of New York          Assistant Attorney General

---

[1] Upon information and belief, Plaintiff has incorrectly spelled the names of several Defendants, to wit, Defendants Loubrir, Hammer, Lubinsky; Overbough, and Robiani; the Court shall refer to these Defendants by their correctly spelled names: Loubier, Haner, Lubinski, Overbaugh, and Robbiani.

Attorney for all served Defendants[2]
Office of Attorney General–Albany Office
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

Plaintiff Gary Renelique brings this *pro se* action, pursuant to 42 U.S.C. § 1983, alleging

Defendants violated his civil rights. In his Complaint, Renelique sues twenty-five (25) Defendants

for various constitutional violations regarding incidents allegedly occurring between April 4, 2002

through September 28, 2002. Dkt. No. 1, Compl. Essentially, Renelique claims that during his stay

at Greene Correctional Facility, the Defendants, either collectively or individually, (1) denied

Plaintiff proper medical and/or mental health care; (2) threatened, harassed, and physically assaulted

Plaintiff; and (3) refused to process grievances, investigate complaints of misconduct, and/or

provide him with notary services. *See generally id.* Plaintiff also asserts a claim under the

Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq.*, and asks this Court to assert

pendant jurisdiction over his state claims of assault and battery.

Presently before this Court is a Motion for Summary Judgment brought by all Defendants,

*sans* Geren and Rosenthal, pursuant to FED. R. CIV. P. 56(b). Dkt. No. 58. Plaintiff opposes the

Motion. Dkt. Nos. 67-68.[3] For the reasons that follow, it is recommended that Defendants' Motion

be **granted** and Plaintiff's Complaint be **dismissed** in its entirety.

---

[2] Defendants Geren and Rosenthal have not been properly served and have not appeared in this action. *See infra* Part.II.B.

[3] The Motion was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

# I. BACKGROUND

## A. Outline of Plaintiff's Claims

Plaintiff's multitudinous claims are as follows:[4]

1.      Joseph David, Superintendent of Greene Correctional Facility, refused to speak to Renelique about his claim that he was not receiving any medical treatment for an assault that occurred on May 22.  On July 12, Superintendent David again refused to speak with Renelique and instead transferred him to Great Meadow Correctional Facility (Compl. at "Facts" ¶¶ 8-9);

2.      On April 11, 23 and May 15, Renelique complained to Melody Eldred, Deputy Superintendent of Greene, regarding medical treatment. Eldred told Renelique that the facility doctor would continue his medical treatment, however, such treatment never occurred (Compl. at "Facts" ¶¶ 10-11);

3.      Deputy Superintendent Eldred failed to do anything about threats and harassment Renelique received from employees (Compl. at "Facts" ¶ 11);

4.      Renelique complained to Robert K. Woods, Deputy Superintendent of Security at Greene, on April 10, 26, May 8, 22, June 3, and 12, regarding employee threats and harassment, however, Woods failed to act (Compl. at "Facts" ¶ 12);

5.      Clark Wilson, Deputy Superintendent of Programs at Greene, denied Renelique use of the "legal advance copy" on May 31, June 5, and 18 (Compl. at "Facts" ¶ 13);

6.      Laura Preble, Nurse Administrator at Greene, failed to respond to complaints Renelique filed on April 11, May 15, June 30, and July 4, regarding various injuries (Compl. at "Facts" ¶ 14);

7.      Nurse Administrator Preble made references in Renelique's medical files indicating she did not believe he was suffering from any injuries (Compl. at "Facts" ¶ 15);

8.      From April 5 through July 12, Dr. Kotzin failed to treat Renelique for his serious injuries[5] or

_____

[4] The following summary is adopted from Marilyn Berlin's Declaration, submitted in support of Defendants' Motion for Summary Judgment, which this Court finds to be a correct summary; where necessary, the Court has supplemented those claims with any further allegations Plaintiff presented in his verified Complaint.  Dkt. No. 58, Attach. # 10, Berlin Decl. at ¶ 4.  All dates, unless otherwise noted, occurred in 2002.  Defendants' names have been underlined.

[5] Renelique lists the following injuries: head-trauma, right side paralysis, amnesia seizures, breathing complications, back spine injuries, Hepatitis C, and hemorrhoids.  Compl. at "Facts" ¶ 15.

to schedule him for therapy (Compl. at "Facts" ¶ 15);

9.    During May, <u>Nurse Cole</u> denied Renelique equal treatment during sick call.  This denial of care was cruel and retaliatory (Compl. at "Facts" ¶ 16-17);

10.    <u>Kathy Cavanaugh</u>, Unit Chief Mental Health at Coxsackie Correctional Facility, failed to schedule a meeting with <u>Dr. Kotzin</u>, <u>Nurse Preble</u>, and <u>Psychiatrist Geren</u> (Compl. at "Facts" ¶ 18);

11.    <u>Dr. Geren</u> prescibed medication that damaged Renelique's liver and nervous system (Compl. at "Facts" ¶ 19);

12.    On August 11 and September 28, Renelique requested copies of his mental health records from <u>Corina Loubier</u>, Mental Health Technician at Coxsackie, and also informed <u>Loubier</u> of <u>Cavanaugh's</u> and <u>Geren's</u> misconduct, however, <u>Loubier</u> failed to acknowledge and/or respond (Compl. at "Facts" ¶¶ 20-21);

13.    On August 1 and September 28, Renelique complained to <u>H.E. Smith</u>, Director of Mental Health at Coxsackie, who failed to respond (Compl. at "Facts" ¶ 21);

14.    On or about May 2, <u>Officer Lemay</u> threatened and harassed Renelique regarding Renelique's disability and removed him from housing unit B-1-10 cube to C-1-21 (Compl. at "Facts" ¶ 22);

15.    In May, <u>Officer Wayne Holt</u> denied Renelique notary service and advance copies of legal documents (Compl. at "Facts" ¶ 23);

16.    <u>Marilyn Berlin</u>, Grievance Supervisor at Greene, failed to investigate unspecified allegations of April 10, 17, 18, 23, May 5, June 3, 7, and July 9 and threatened and harassed Renelique for filing "too many grievances" (Compl. at "Facts" ¶ 24);

17.    On April 11 through May 8, <u>Berlin</u> refused to call Renelique to the grievance hearing and failed to investigate allegations, stating that Plaintiff has filed "too many grievances" (Compl. at "Facts" ¶ 25);

18.    On May 22, <u>Officer Molesky</u> struck Plaintiff in the chest, stating he should not have a laundry bag (Compl. at "Facts" ¶ 26);

19.    On May 22, at approximately 8:30 a.m., <u>Defendant Moore</u> forcefully took Plaintiff to a Special Housing Unit (SHU) and, upon arrival, <u>Moore</u> assaulted Plaintiff by striking him in the head, back, and neck.  <u>Officer Haner</u> then grabbed Plaintiff by the chest, hit his head against the wall,

and repeatedly punched Plaintiff in the head until he fell unconscious (Compl. at "Facts" ¶¶ 27-28);

20.     In June, Officer <u>Lubinski</u> threatened and harassed Renelique in retaliation for grievances Renelique submitted to state officials, and, despite Renelique's breathing problems, moved him to a windowless cube (Compl. at "Facts" ¶ 29);

21.     In June 2002, <u>Officer Peterson</u> threatened and harassed Renelique because of his disability, told Plaintiff he takes too long to go back and forth from the mess-hall, and threatened Plaintiff with a misbehavior report if he failed to return from the mess-hall with the other inmates (Compl. at "Facts" ¶ 30);

22.     In May and June, <u>Officer Hotaling</u> refused to give Renelique his special diet for two to three days and further obstructed Renelique from attending law library callout at 5:30 p.m. (Compl. at "Facts" ¶ 31);

23.     On April 4, <u>Defendant Moore</u> refused to call a sergeant for Renelique when he claimed that the mess hall was too far away and, in light of an unspecified disability, caused Plaintiff considerable pain (Compl. at "Facts" ¶ 32);

24.     On June 13, Renelique made a Freedom of Information Law (FOIL) request to <u>Diane Warner</u>, Inmate Records Coordinator at Greene, for the names of the Defendants, but she declined to release the names (Compl. at "Facts" ¶ 33);

25.     On June 12, <u>Sergeant Overbaugh</u> threatened and harassed Renelique, provoking a fist fight. On July 1, <u>Sergeant Overbaugh</u> again threatened and harassed Plaintiff regarding a broken boot lace, and refused to let Plaintiff go to his "special diet contract" (Compl. at "Facts" ¶ 34); and

26.     On June 9, <u>Defendant Robbiani</u> told Renelique he was investigating Renelique's complaints, but instead, <u>Robbiani</u> threatened and harassed Renelique (Compl. at "Facts" ¶ 35).

## B. Facts

In support of their Motion for Summary Judgment, Defendants assert that Plaintiff has failed to exhaust his administrative remedies with regard to all of the above claims except for the claims summarized above at ## 8, 10, 11, 12, 13, 19, and 21 (various claims asserted against Defendants

Kotzin, Cavanaugh, Loubier, Smith, Moore, Haner, and Peterson).  Accordingly, they have submitted a Statement of Material Facts covering solely what they deem to be the exhausted claims and therefore properly before the Court's review.  The following constitutes the uncontroverted material facts.[6]  Plaintiff is a New York State prison inmate.  Plaintiff was housed at Greene Correctional Facility from approximately April 4, 2002 to July 12, 2002, when he was transferred to Great Meadow Correctional Facility.  Dkt. No. 58, Attach. # 2, Defs.' 7.1 Statement at ¶ 1.  During his incarceration at Greene, Plaintiff filed twelve grievances, of which only six were appealed to the Central Office Review Committee (CORC).  *Id.* at ¶¶ 2-3.

---

[6] The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with N.D.N.Y.L.R. 7.1, which were not specifically countered nor opposed by Plaintiff.  *See* N.D.N.Y.L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." (emphasis in original)).  As stated above, in light of Defendants' contention that Renelique failed to exhaust his administrative remedies with regard to most of his claims, Defendants have submitted a 7.1 Statement detailing only those uncontroverted material facts relevant to the exhausted claims.  Further discussion of this aspect of Defendants Motion is set forth below.  *See infra* Part II.D.1.  We acknowledge that Defendants have submitted multiple Declarations and Exhibits in support of their Motion.  While the Court appreciates the significant effort put forth by the Assistant Attorney General in defending this action, the Court cannot help but vent its frustration at the haphazard manner in which many of the Exhibits were submitted in support of Defendants' Motion, which is uncharacteristic of previous submissions.  Of particular frustration to the Court is the fact that all of the Exhibits lack page numbers making it inherently difficult for this Court to properly reference a particular page within an Exhibit.  Of further consternation is the fact that, specifically with regard to the Exhibits attached to Marilyn Berlin's Declaration, multiple instances of duplications occur and, in some instances, the pages are placed together out of chronological sequence.  Furthermore, while the Court understands that Defendants limited their 7.1 Statement to only those claims deemed exhausted, the Court notes that many facts underlying the "exhausted" claims were nonetheless omitted from the 7.1 Statement, forcing this Court to piece together some of the underlying facts.  Such perfunctory approach in these submissions has placed numerous, inappropriate burdens upon this Court.  Rather than facilitating a reasonable review of the record, the *laissez-faire* approach to assembling this record unnecessarily encumbered the Court with the arduous task of reconstructing that which should have been presented in a more orderly fashion.  Understand that the Court has not lost sight of the fact that Plaintiff's Complaint, in asserting a plethora of claims, is of course at the heart of the strain being placed upon judicial resources and possibly upon Defendants' Counsel.  And we would be remiss if we did not also mention the chaotic nature of the submissions Plaintiff himself has provided in opposing Defendants' Motion, many of which are entirely irrelevant to his asserted claims.  That being said, we note that many of the facts in Defendants' Declarations and Exhibits were summarily denied by Plaintiff and, as explained more fully below, Plaintiff's conclusory denials of these sworn statements are insufficient to meet his burden as the non-mover to create a genuine issue of material fact.  Therefore, though construing this Motion has absorbed a considerable amount of time, this Court will not go beyond this mention of the deficiencies, with the expectation that no re-occurrence will ensue, and will consider the merits thereto.

**Claims arising out of the May 22, 2002 Incident**

On May 22, 2002, Renelique received a misbehavior report, authored by Defendant

Molesky, charging him with violating prison rules 104.13 (creating a disturbance), 106.10

(disobeying a direct order), and 107.11 (harassing employees).  *See* Dkt. No. 58, Attach. # 9, Ex. G

at (unnumbered)[7] pp. 4-5, Misbehavior Report, dated May 22, 2002; *see also* N.Y. COMP. CODES R.

& REGS., tit. 7, §§ 270.2(B)(5), (7), & (8).  According to the Misbehavior Report, at approximately

7:50 a.m., Defendant Molesky observed that Plaintiff, who was en route to his cell, had improperly

placed his laundry in a commissary bag.  Dkt. No. 58, Ex. G at (unnumbered) pp. 4-5.  Molesky

noted that Plaintiff repeatedly scoffed at and disobeyed Molesky's orders to surrender the bag and

instead screamed and yelled that the bag was his.  *Id*.  Plaintiff's raucous behavior disturbed the

nearby slumbering inmates.  *Id*.  After a disciplinary hearing was held, Plaintiff was found guilty of

all charges, received fifteen (15) days of keeplock confinement, and lost various privileges.  *Id*. at

(unnumbered) p. 1, Disciplinary Hr'g Disposition; *see also* Attach. # 8, Ex. F at (unnumbered) p. 1,

Inmate Disciplinary History.  On May 22, after the altercation between Plaintiff and Molesky,

Defendant Dr. Kotzin, responding to an emergency call, reported to the SHU frisk room to examine

Plaintiff who, upon Kotzin's arrival, was lying face up on the floor with all extremities twitching.

Defs.' 7.1 Statement at ¶ 9.  Kotzin diagnosed Renelique with hyperventilation and had him

"rebreathe" through a plastic bag.  *Id*.; *see also* Dkt. No. 58, Attach. # 23, Gerald L. Kotzin Affirm.

at ¶ 9.  Renelique told Defendant Kotzin that he was struck in the back of his head, however, no sign

of injury, swelling, or tenderness was found in that area.  Defs.' 7.1 Statement at ¶ 9; Kotzin Affirm.

---

[7] As explained, *supra*, in footnote six, the Court will refer to various pages in Defendants' Exhibits by an "unnumbered" page reference.

at ¶ 9.  Dr. Kotzin did discover a very small area of swelling on Renelique's brow over his nose, which Dr. Kotzin attributed to Renelique's fall prior to Kotzin's arrival.  Defs.' 7.1 Statement at ¶ 9; Kotzin Affirm. at ¶ 9.

On June 3, 2002, Renelique submitted an Inmate Grievance Complaint, which was designated GNE-5472-02.  Dkt. No. 58, Attach. # 10, Berlin Decl., Ex. 2.  In his Grievance, Renelique claimed that, on May 22, 2002, CO Molesky threatened and harassed him and took his net bag.  Berlin Decl., Ex. 2 at (unnumbered) p. 35.  He further asserted that Officer Hermen[8] discriminated against Renelique due to his handicap and punched Renelique several times in the head and back of his neck until he was knocked unconscious.  *Id*.  In his Grievance, Renelique requested an investigation into the assault, the names of the officers present and the sergeant who escorted him to SHU that morning, as well as scheduled meetings with the inspector general, a corrections counselor, and a psychiatrist.  *Id*.  Lastly, Renelique sought a copy of the report Dr. Kotzin prepared regarding the assault/treatment.  *Id*.  As directed by Defendant Robert K. Woods, Deputy Superintendent of Security Services, Captain John Padyk[9] conducted an investigation, with the assistance of Lieutenant Robbiani, into Renelique's complaints and subsequently reported that the facts of the alleged incident did not support the inmate's claims, thus, he recommended that the grievance be denied.  *Id*. at (unnumbered) pp. 14-16 & 30.  On June 12, 2002, the Superintendent denied the Grievance stating that there was no indication of staff misconduct and no signs of injury.

---

[8] Officer Hermen is not a Defendant in this action.  It is likely that Plaintiff intended to reference Defendant Haner as his name was specifically mentioned in Renelique's subsequent appeal of the Superintendent's denial of his Grievance.  Berlin Decl., Ex. 2 at (unnumbered) pp. 5 & 9-10.  CO Haner was also interviewed in conjunction with the investigation of Plaintiff's Grievance and explained that Plaintiff fainted and he assisted Plaintiff to the floor.  *Id*. at (unnumbered) p. 20.

[9] Padyk is not a Defendant in this action.

*Id*. at (unnumbered) p. 12.  Renelique appealed that determination to CORC, this time stating that

Defendant Haner and an unnamed Sergeant[10] punched him in the back of his head and neck until he

was knocked unconscious.  *Id*. at (unnumbered) pp. 5 & 9-10.  CORC upheld the Superintendent's

decision and found the investigation was properly conducted.  *Id*. at (unnumbered) p. 1.  CORC

further noted that an employee's appropriate performance of his duties should not be construed as

harassment and that the evidence indicated that during his admission to SHU, Renelique passed out

and was guided to the floor by staff and treated by medical staff.  *Id*. at (unnumbered) p. 1.

**Claims Against Dr. Kotzin**

Plaintiff's Ambulatory Health Records (AHR) show at least thirteen (13) different occasions

over a three-month period when Plaintiff was personally attended to by Dr. Kotzin.  *See generally*

Dkt. No. 58, Attach. # 5, Ex. C, AHR; Kotzin Decl. at ¶ 3.  On May 13, 2002, Renelique filed an

Inmate Grievance Complaint, designated GNE-5460-02, against Dr. Kotzin regarding a meeting

between the two on May 10, 2002, wherein Renelique questioned whether he had Tourette's

Syndrome, to which Dr. Kotzin responded he was not interested in treating such a patient and did

not know if he indeed had this syndrome.  Berlin Decl., Ex. 8 at (unnumbered) pp. 1-2.  Renelique

also requested special back, neck, and ankle supports, to which Dr. Kotzin replied he did not believe

in such supports.  *Id*.  Renelique requested a meeting with both Nurse Administrator Preble and Dr.

Kotzin.  *Id*.  Upon investigation, IGRC determined that Dr. Kotzin's response was that he did not

have sufficient knowledge to assess whether Renelique had Tourette, but that Dr. Geren had stated

Renelique did not meet the criteria for such a diagnosis and that supports or surgery were not

---

[10] As explained below, Plaintiff's reference to an unnamed sergeant is deemed a reference to Defendant Sergeant Moore.  *See infra* note 16.

indicated for Renelique's treatment.  *Id*. at (unnumbered) p. 4.  No further appeals were pursued on this Grievance.

On June 7, 2002, Renelique filed an Inmate Grievance Complaint, designated GNE-5483-02, against Defendant Kotzin for his failure to schedule a consultation with surgeons.  Berlin Decl., Ex. 3 at (unnumbered) p. 6.  Renelique stated he was in serious pain, which was exacerbated by the May 22nd assault, and that Dr. Kotzin exhibited deliberate indifference towards Renelique's serious medical needs by failing to provide proper medical care.  *Id*.  As directed by Defendant Joseph F. David, Superintendent of Greene, Defendant Melody Eldred, Deputy Superintendent of Administrative Services, conducted an investigation and determined that Renelique had been receiving all necessary medical care.  *Id*. at (unnumbered) p. 13.  On June 21, 2002, the Superintendent denied Renelique's Grievance, noting he was receiving all necessary medical care and that his claims against Dr. Kotzin were unsubstantiated.[11]  *Id*. at (unnumbered) p. 2.  Renelique appealed the Superintendent's decision to CORC asking for further investigation and an immediate consultation with a surgeon.  *Id*.  On July 17, 2002, upon recommendation of the Division of Health Services, CORC upheld the Superintendent's decision.  *Id*. at (unnumbered) p. 1.  CORC further noted that Renelique had already been transferred to another facility.  *Id*.

**Harassment Claim Against Officer Peterson**

On June 14, 2002, Renelique filed an Inmate Grievance Complaint, designated GNE-5489-02, against Officer Peterson for threatening and harassing him when Renelique returned from the messhall apart from all the other inmates.  Berlin Decl., Ex. 4 at (unnumbered) p. 8.  In his

---

[11] The Superintendent interpreted Renelique's Grievance as further asserting a harassment claim against Dr. Kotzin, which was similarly found to be unsubstantiated.  Berlin Decl., Ex. 3 at (unnumbered) p. 2.

Grievance, Renelique asserts that his tardy arrival was due to his medical disability and that such harassment has occurred in the past, which Deputy Eldred had been made aware of. *Id.* Through an investigation, conducted in part by Sergeant Overbaugh as directed by Robert Woods, it was revealed that Renelique did not suffer from any handicap and that, upon his late arrival, Officer Peterson merely counseled Plaintiff on his tardiness indicating that such conduct was cause for issuing a misbehavior report, which Renelique interpreted to be a threat and harassment. *Id.* at (unnumbered) pp. 9-15. On June 25, 2002, Superintendent David denied Renelique's Grievance as unsubstantiated. *Id.* at (unnumbered) p. 2. On appeal, Renelique stated that Sergeant Overbaugh threatened to kill him on June 23, 29, and July 1, and incited Renelique to fight him on June 29; furthermore, Renelique asserted that Sergeant Overbaugh wrote a retaliatory misbehavior report about broken shoelaces. *Id.* at (unnumbered) pp. 2 & 6. CORC upheld the Superintendent's decision, noting that Renelique's claims against Sergeant Peterson were unsubstantiated and that the Facility Health Services Director indicated that Renelique did not have a handicap at that time which would have required a medical pass to excuse his lateness during movement periods. *Id.* at (unnumbered) p. 1. CORC further noted that on July 12, 2002, Renelique was transferred to another facility and advised him to submit any further medical concerns through sick call procedures. *Id.* Finally, as to his claims against Sergeant Overbaugh, CORC advised that this issue constituted a separate issue not addressed in his original complaint and should be the subject of a separate grievance. *Id.*

**Harassment Claims Against Sergeant Overbaugh**

On June 22, 2002, Renelique filed an Inmate Grievance Complaint, designated GNE-5501-02, against Sergeant Overbaugh for harassing Renelique during his investigation of Renelique's

Grievance against Peterson.  Berlin Decl., Ex. 5 at (unnumbered) p. 8.  Renelique further claimed that Sergeant Overbaugh taunted him about his handicap and indicated that he believed Renelique was just playing games.  *Id*.  Through an investigation, conducted in part by Lieutenant Robbiani as directed by Robert Woods, it was revealed that Renelique's claims were without merit and that the bases for all of Renelique's claims revolve around his belief that he should be at another facility and if he complains enough, such will come to fruition.  *Id*. at (unnumbered) pp. 9-11.  It was further noted that in contrast to the information he wrote on his Grievance, he was not in the "Medical Disable/Handicap Program."  *Id*. at (unnumbered) p. 10.  Based on the investigation conducted, Superintendent David denied Renelique's Grievance.  *Id*. at (unnumbered) p. 2.  On appeal to CORC, Renelique reiterated that he was threatened and harassed by Overbaugh and further indicated that he wished to be transferred out of Greene for safety reasons and that other inmates have threatened to kill him.  *Id*. at (unnumbered) pp. 2 & 7.  On August 7, 2002, CORC upheld the Superintendent's decision, noting that Plaintiff's claims were unsubstantiated and further noting that Renelique had already been transferred to another facility.  *Id*. at (unnumbered) p. 1.

**Claims of Harassment Against Defendant Hotaling**

On June 27, 2002, Renelique filed an Inmate Grievance Complaint, designated GNE-5502-02, against Defendant Officer Hotaling for threatening and harassing Renelique.  Berlin Decl., Ex. 6 at (unnumbered) pp.7-8.  Renelique stated that this "white man" questioned him about his personal life in front of other "low life inmates," and requested an outside investigation into his claims.  *Id*.  Upon investigation, directed by Robert Woods, it was determined that this Grievance was unsubstantiated and yet another in a "series of grievances and complaints" submitted with the hope of being transferred.  *Id*. at (unnumbered) p. 11.  Accordingly, Superintendent David denied the

Grievance on July 10, 2002.  *Id*. at (unnumbered) p. 2.  On November 20, 2002, CORC denied

Renelique's appeal noting it was without merit and further noting that he had already been

transferred to another facility on July 12, 2002.  *Id*. at (unnumbered) p. 1.

**Claims Against Defendant Cavanaugh**

During the relevant time period covered in the Complaint, Plaintiff was seen by medical

personnel at Greene as well as employees of the Office of Mental Health and the Central New York

Psychiatric Center.  Defs.' 7.1 Statement at ¶¶ 4-6.  Treatment notes indicate that throughout April

and May 2002, Renelique received ongoing treatment at the Central New York Psychiatric Center

for numerous medical delusions and paranoid ideations.  Dkt. No. 58, Attach. # 7, Psychiatric

Records.  It was determined that Renelique was preoccupied with physical complaints which

appeared to have no reality-based etiology.  *Id*.  On May 14, 2002, Renelique filed an Inmate

Grievance Complaint, designated GNE-5459-02, against V. Romero,[12] who Renelique describes as a

person in charge of the psychiatrist department; the Grievance was filed due to Romero's failure to

provide him with copies of his psychiatrist report as requested, which Renelique claimed he needed

to produce to federal judges prior to May 24, 2002.  Berlin Decl., Ex. 7 at (unnumbered) pp. 1-3.

Renelique further indicated that he repeatedly sought to meet with Nurse Administrator Preble

regarding medical problems.  *Id*. at (unnumbered) p. 1.  In response to this complaint, Kathleen

Cavanaugh, Unit Chief Mental Health, met with Plaintiff on May 17, 2002, and reported that the

Mental Health Unit had not previously received such a request from Plaintiff.  *Id*. at (unnumbered)

p. 4.  During their meeting, Cavanaugh explained to Plaintiff that if he wanted his mental health

records he needed to submit a specific request to Mental Health since DOCS Medical Department

---

[12] V. Romero is not a Defendant in this action.

could not release such information. *Id*. During that meeting, Renelique submitted a written request

and was told by Cavanaugh that the request would be processed. *Id*. The Inmate Grievance Review

Committee (IGRC) resolved that Renelique's complaint had been properly addressed. *Id*. at

(unnumbered) p. 2. No further appeals on this Grievance were pursued.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no

genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of

law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers

to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine

issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986)). To defeat a motion for summary judgment, the non-movant

must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on

"mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also

Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are

ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set

out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir.

1994). To that end, sworn statements are "more than mere conclusory allegations subject to

disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and

should be treated as evidence in deciding a summary judgment motion" and the credibility of such

statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v.

Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.

*-14-*

1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B. Service of Process and Pleading Matters

Under FED. R. CIV. P. 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period.  Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[13] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, dismissing the case **without prejudice** as to that defendant. *Id*. (emphasis added).

---

[13] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days of the filing of the complaint.  N.D.N.Y.L.R. 4.1(b).

In this case, where Renelique has been authorized by the Court to proceed *in forma pauperis*, pursuant to 28 U.S.C. § 1915, the United States Marshals Service was appointed to effect service of process of the Summons and Complaint on his behalf.  *See* 28 U.S.C. § 1915(d); FED. R. CIV. P. 4(c)(2); N.D.N.Y.L.R. 5.1(h); *see also* Dkt. No. 4.  In accordance with the Local Rules of Practice for the Northern District of New York,

> [i]n the case of a prisoner's civil rights action, or any action where a party has been granted leave to proceed in forma pauperis, the Marshal shall serve the summons and complaint **by regular mail pursuant to Fed. R. Civ. P. 4(c)(2)**.  The Marshal shall file the return or other acknowledgment of service with the Court.  The return shall constitute *prima facie* evidence of the service of process.  If no acknowledgment of service is filed with the Court, the Marshal shall notify the plaintiff and, **if requested by the plaintiff**, shall make personal service as provided in Fed. R. Civ. P. 4.

N.D.N.Y.L.R. 5.1(h) (emphasis added).

To date, service has not been properly effectuated on Defendants Geren and Rosenthal.  A review of the Docket Report reveals that Summonses were issued for Defendants Geren and Rosenthal on October 30, 2003, and were later returned unexecuted.  Dkt. Nos. 6 (Geren) & 11 (Rosenthal).  Accompanying the returned Summons for Geren was a note from the New York State Department of Correctional Services (DOCS) indicating that Defendant Geren, as well as other employees named in this action, could not be identified based upon the information provided.  Dkt. No. 6.  And, accompanying the returned Summons for Rosenthal was a note from DOCS indicating that Defendant Rosenthal had retired and no longer resided in the state.  Dkt. No. 11.  On March 24, 2004, the Court received correspondence from Plaintiff seeking to compel the U.S. Marshals Service to effectuate service on Defendants Loubier and Smith (Dkt. No. 34); a similar plea was not proffered as to Geren or Rosenthal.  While acknowledging that these Defendants were not served, Plaintiff fails to provide any explanation for his failure to pursue service for these Defendants,

despite the fact that Defendants raised this very issue in their Memorandum of Law in support of

their Motion and indicated to the Court that the unserved Defendants should be dismissed.  Dkt. No.

58, Attach. # 28, Defs.' Mem. of Law at pp. 23-24; Dkt. No. 67, Attach. # 1, Pl.'s Mem. of Law at

p. 1 (acknowledging no service of Defendants Geren and Rosenthal and stating that these

Defendants retired and/or were suspended due to an assault and battery on other inmates).  Thus, the

Court has not obtained the requisite jurisdiction over these Defendants.

      Usually, when we recommend dismissal of a Defendant due to the Plaintiff's failure to

effectuate service, the dismissal is <u>without prejudice</u>.  FED. R. CIV. P. 4(m).  However, in reviewing

the Complaint, the Court notes that there is no mention of any personal involvement by Defendant

Rosenthal in any of the alleged constitutional violations.  In fact, the only instance Rosenthal is

mentioned in the Complaint is in the caption itself.  In his Affidavit submitted in Opposition to

Defendants' Motion, Plaintiff states that Defendant Rosenthal told Plaintiff he would not go around

the facility investigating all his complaints.  Dkt. No. 67, Pl.'s Aff. at ¶ 21.  Plaintiff further accuses

Rosenthal of intentionally redacting or failing to file grievances Plaintiff submitted.  *Id*.  However,

Plaintiff fails to elaborate and failed to provide a date regarding specific grievances which were

altered or rejected without filing and what capacity Rosenthal committed such acts.  Moreover, the

Court is unaware of the position Rosenthal held at Greene which would enable him to commit such

acts, *i.e.*, was he a grievance supervisor or a correctional officer?

      The new information/allegations about Rosenthal included in Plaintiff's Opposition papers

are improper in that opposition papers are not the proper vehicle to instill new causes of action.  *See*

*In re Private Capital Partners, Inc.*, 139 B.R. 120, 124-25 (Bankr. S.D.N.Y. 1992) (citing cases for

the proposition that a plaintiff's attempt to amend his complaint by instituting new causes of action

*-17-*

in his opposition papers to defendants' dispositive motion is in direct contravention of and

amounted to an attempt to circumvent the Federal Rules of Civil Procedure, namely Rule 15(a)).

Further, arguments in legal memoranda may not in themselves serve to create a triable issue of

material fact when unsupported by accompanying affidavits, pleadings, depositions, or stipulations.

*Greaves v. State of New York*, 958 F. Supp. 142, 144 (S.D.N.Y. 1997) (citing, *inter alia*, 10A

CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND

PROCEDURE: CIVIL 2D § 2723 at 64 (1996)).  In light of its impropriety, Plaintiff's submission will

not be read as a motion to amend or supplement.

Further, in light of the fact that no claims were asserted against Defendant Rosenthal in the

Complaint, the Court notes that under the authority provided by 28 U.S.C. § 1915(e)(2)(B)(ii), "the

court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a

claim on which relief may be granted."  It is well settled that the personal involvement of a

defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v.*

*Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and furthermore, the doctrine of respondeat superior is

inapplicable to § 1983 claims.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*,

481 F.2d 1028, 1033 (2d Cir. 1973).  Since Renelique has failed to adequately allege the personal

involvement of Defendant Rosenthal in any constitutional violation, we recommend **dismissal** of

this Defendant from this lawsuit, **with prejudice**, pursuant to 28 U.S.C. § 1915, for failure to state a

claim.  And, since Plaintiff failed to effectuate proper service on Defendant Geren, we recommend

**dismissal** of this Defendant, **without prejudice**.

### C.  Eleventh Amendment

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be

*-18-*

construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Although by its terms, the Amendment bars suit by citizens of one state against another state, the Supreme Court has held that such Amendment similarly bars suits against a state by its own citizens.  *Hans v. Louisiana*, 134 U.S. 1 (1890).  "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'"  *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court.  *Pennhurst,* 465 U.S. at 98; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984).

To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state."  *Rourke v. New York State Dep't. of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994) & *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint.  The Second Circuit has held that in accordance with *Ex parte Young*, 209 U.S. 123 (1908), "acts of state officials that

violate federal constitutional rights are deemed not to be acts of the state and may be subject of injunctive or declaratory relief in federal court." *Berman Enters., Inc. v. Jorling,* 3 F.3d at 606 (citations omitted); *see also Rourke*, 915 F. Supp. at 540.  In his prayer for relief, Plaintiff seeks monetary relief for compensatory and punitive damages.  Additionally, Plaintiff seeks a declaratory judgment that Defendants Moore and Haner violated his Eighth Amendment rights and aks the Court to mandate an immediate medical examination and treatment by a specialist.  Thus, Plaintiff may maintain his action for declaratory relief as against the individual Defendants in their official capacities insofar as the Plaintiff seeks prospective relief.  For all other claims asserted against the Defendants in their official capacities wherein prospective relief is not sought, the Court recommends **denying** such claims pursuant to the Eleventh Amendment.

### D.  Claims Against the Remaining Defendants

The remaining Defendants who have moved for dismissal of this action are present or former employees of Greene Correctional Facility, except Mr. Hal Smith, Executive Director of the New York State Psychiatric Center, a facility operated by the New York State Office of Mental Health (OMH); Cathy Cavanaugh, the Mental Health Unit Chief at Coxsackie Correctional Facility, who is also an OMH employee; and Corina Loubier, the Mental Health Technician at Coxsackie, another OMH employee.

### 1.  Exhaustion of Administrative Remedies

Prior to assessing the merits of Plaintiff's claims, we address Defendants' affirmative defense that Renelique has failed to exhaust his administrative remedies as to the majority of claims propounded in this action.  According to Defendants, all claims asserted in Plaintiff's Complaint are unexhausted with the exception of the following claims asserted at

¶ **15**–relating to Defendant Kotzin's failure to treat Plaintiff for various maladies;
¶ **18**–relating to Defendant Cavanaugh's failure to schedule a meeting with health care providers;
¶ **19**–relating to adverse effects Plaintiff suffered as a result of medication prescribed by Defendant Geren;
¶¶ **20-21**–relating to Defendant Loubier's failure to provide copies of Plaintiff's health records as requested;
¶ **21**–relating to Defendant H.E. Smiths failure to respond to Plaintiff's complaints;
¶ **27**–relating to Defendant Moore's assault of Plaintiff on May 22, 2002;
¶ **28**–relating to Defendant Haner's assault of Plaintiff on May 22, 2002; and
¶ **30**–relating to Defendant Peterson's harassment of Plaintiff.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that for actions brought by prisoners under 42 U.S.C. § 1983, the inmate must first exhaust his or her administrative remedies. The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Review Committee (IGRC), a committee comprised of both inmates and facility employees.[14] N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7(a). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id*. Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id*. at § 701.7(b). Finally, if the superintendent's decision is appealed, the Cental Office Review Committee (CORC) makes the final administrative determination. *Id*. at § 701.7(c). Only upon exhaustion of these three levels of

---

[14] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member of volunteer). N.Y. Comp. Codes R. & Regs tit.7, § 701.4.

review may a prisoner seek relief pursuant to § 1983 in federal court.  *Reyes v. Punzal*, 206 F. Supp.

2d 431, 432 (W.D.N.Y. 2002) (citing *Sulton v. Greiner*, 2000 WL 1809284, at *3 (S.D.N.Y. Dec.11,

2000)); *Petit v. Bender*, 2000 WL 303280, at *2-3 (S.D.N.Y. Mar. 22, 2000).  Specifically excluded

from the grievance process are complaints regarding outside agencies.  *See* N.Y. COMP. CODES R. &

REGS. tit. 7, § 701.3(f).

     In addition to the formal grievance procedure described above, the regulations provide for an

expedited grievance procedure for claims of "harassment" arising out of allegations of employee

"misconduct meant to annoy, intimidate, or harm and inmate."  N.Y. COMP. CODES R. & REGS. tit.

7, § 701.11(a) (establishing an expedited procedure because facility employee harassment is of

"particular concern to the administrators of department facilities[]").  Pursuant to this expedited

procedure, the inmate first reports the incident to the employee's immediate supervisor.  *Id.* at §

701.11(b)(1).  The inmate's allegations are then given a grievance number and the superintendent

(or his designee) must promptly decide whether the grievance, if true, would represent a *bona fide*

case of harassment.  *Id.* at §§ 701.11(b)(2), (3).  If the superintendent determines that the allegations

do not represent a *bona fide* case of harassment, the allegations are automatically routed to the

IGRC for resolution according to the formal three-step grievance procedure outlined above.  *Id.* at

§§ 701.11(b)(3) & 701.7.  If the superintendent finds that the allegations do represent a *bona fide*

case of harassment, then he must either initiate an in-facility investigation by higher-ranking

personnel, or request an investigation by the Inspector General's Office, and if criminal activity is

involved, the superintendent may request an investigation by the New York State Police Bureau of

Criminal Investigations.  *Id.* at §§ 701.11(b)(4)(i), (ii); *see also Perez v. Blot*, 195 F. Supp. 539,

542-43 (S.D.N.Y. Apr. 10, 2002) (describing the grievance system).  Although inmates are not

precluded from filing "formal" complaints of harassment, opting to utilize the expedited process will satisfy the exhaustion requirement if followed through to conclusion. *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.11(b) (stating that the existence of the expedited procedure "does not preclude submission of a formal grievance"); *Perez v. Blot*, 195 F. Supp. 2d at 544 (indicating that a prisoner who exhausts his claim of harassment through the expedited procedure is deemed to have fully satisfied the PLRA requirement of exhaustion).

When the exhaustion affirmative defense is raised, the defendants bear the burden of proving that administrative remedies have not been exhausted. *Howard v. Goord*, 1999 WL 1288679, at * 3 (E.D.N.Y. Dec. 28, 1999) (citations omitted). The party opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Id*. (citations omitted).

In support of their claim of unexhaustion, Defendants provide the Declaration of Marilyn Berlin, Inmate Grievance Program Supervisor at Greene and custodian of the official grievance records at Greene.[15] Dkt. No. 58, Berlin Decl. at ¶ 1. As set forth in the Declaration, and further supported by accompanying Exhibits, Plaintiff filed twelve Grievances during his stay at Greene, only six of which were appealed to CORC. *Id*. at ¶¶ 5 & 11. In Defendants' assessment, only three of the six appealed Grievances are applicable to the within action:

> **GNE-5472-02**–Relating to Plaintiff's contention that, "[o]n May 22, 2002 Officer Molesky struck plaintiff in the chest, stating he should not have a laundry bag"; "Officer [Haner] then grabbed plaintiff and assaulted him until he became unconscious";
> **GNE-5483-02**–Relating to Plaintiff's contention that, "Dr. Kotzin failed to treat plaintiff for his serious injuries or to schedule him for therapy"; and
> **GNE-5489-02**–Relating to Plaintiff's contention that, "[i]n June, 2002 Officer Peterson

---

[15] Berlin avers that the official grievance records are generated and maintained in the ordinary course of business by DOCS. Berlin Decl. at ¶ 1.

threatened and harassed plaintiff because of his disability, and threatened him with a misbehavior report".

Berlin Decl. at ¶ 4.

Defendants concede that the claims set forth against Defendants Cavanaugh, Geren, Loubier, and Smith may be deemed exhausted since, in accordance with DOCS Directive 4040(III)(F), Renelique could not have filed a grievance with DOCS regarding employees of another state agency, here, OMH. *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.3(f).

The Court agrees with Defendants' estimation and deems the following claims to be exhausted: (1) Dr. Kotzin's failure to provide necessary medical treatment (Compl. at "Facts" ¶ 18); (2) Kathy Cavanaugh's failure to schedule a meeting with Dr. Kotzin, Nurse Preble, and Dr. Geren (Compl. at "Facts" ¶ 18); (3) Corina Loubier's failure to copy Plaintiff's mental health records and failure to respond to Plaintiff's complaints about Cavanaugh's and Geren's misconduct (Compl. at "Facts" ¶¶ 20-21); (4) H.E Smith's failure to respond to Renelique's complaints (Compl. at "Facts" ¶ 21); (5) Moore's[16] and Haner's assault of Plaintiff on May 22 (Compl. at "Facts" ¶¶ 27-28); and (6) Officer Peterson's threats and harassment of Plaintiff due to his disability (Compl. at "Facts" ¶ 30). While Plaintiff did file and appeal Grievances against Defendants Molesky and Overbaugh, the claims set forth in Renelique's civil Complaint are different than those set forth in the Grievances, thus, Plaintiff's claim of excessive force against Molesky and harassment/threats against Overbaugh are not deemed exhausted. *Compare* Compl. at "Facts" ¶ 18 (allegation against Molesky for striking Plaintiff) *with* Berlin Decl., Ex. 2 at (unnumbered) p. 35 (GNE-5472-02 asserting Molesky harassed

---

[16] Defendant Sergeant Moore is not specifically referenced in Renelique's Grievance # GNE-5472-02, however, Sergeant Moore was interviewed during the investigation and was determined to be one of the sergeants who received Plaintiff into SHU. Berlin Decl., Ex. 2 at (unnumbered) pp. 15-16 & 24. Thus, Defendants acknowledge, and this Court agrees, that Plaintiff's excessive force claim, arising out of the May 22 incident, is asserted against Sergeant Moore, not CO Moore, and is deemed exhausted. After parceling through this discrepancy, it is evident that no claims have been asserted against CO Moore. *See infra* Part II.D.3.a.

and threatened Plaintiff); *Compare* Compl. at "Facts" ¶ 34 (allegation against Overbaugh for threats

and harassment on June 12 and July 1) *with* Berlin Decl., Ex. 5 at (unnumbered) p. 8 (GNE-5501-02

asserting Overbaugh harassed Plaintiff about his disability on June 23, 2002); *see also Sulton v.

Wright*, 265 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) (noting that a prisoner satisfies the exhaustion

requirement with respect to a particular claim so long as the prisoner's grievance "present[s] the

relevant factual circumstances giving rise to a potential claim . . . sufficient under the circumstances

to put the prison on notice of potential claims") (quoting *Irvin v. Zamora*, 161 F. Supp. 2d 1125,

1134-35 (S.D. Cal. 2001) and further citing *Lewis v. Washington*, 197 F.R.D. 611, 614 (N.D. Ill.

2000)).  Thus, because the facts in Plaintiff's Grievances are different than those included in his

civil Complaint, clearly he failed to put the prison on notice as to such claims and accordingly

provide them with the opportunity to investigate and cure any possible violations.  Similarly, with

regard to Defendant Hotaling, Plaintiff's claim of denial of a special diet and obstructing his ability

to attend a law library callout are not exhausted since such claims are different than that set forth in

the Grievance against Defendant Hotaling.  *Compare* Compl. at "Facts" ¶ 31 (denial of special diet

and law library) *with* Berlin Decl., Ex. 6 at (unnumbered) p. 6 (GNE-5502-02 asserting Hotaling

harassed Plaintiff when he asked him personal questions in front of other inmates).

      In light of the information provided to this Court, we find that the Defendants have

adequately carried their burden of proof on their affirmative defense.  Instead of countering the

Defendants' claims of unexhaustion, Plaintiff summarily asserts that he was unable to appeal the six

other Grievances because on May 22, 2002, he was in a special housing unit and that such

circumstances prevented him from appealing all of his grievances. Dkt. No. 67, Pl.'s Aff. at ¶ 20.

The Court finds Plaintiff's assertion implausible and clearly inadequate to create an issue of fact.  In

the first instance, and putting aside for the moment that some of the six unexhausted Grievances are irrelevant to the claims asserted herein, at least three of the six unexhausted Grievances were filed after May 22.  Even if we were to presume that Plaintiff remained confined in SHU during the filing of such Grievances, it is incredulous that Plaintiff would be enabled to file a Grievance while purportedly in SHU but not an appeal of the very same Grievance due to the same confinement.  Furthermore, in reviewing the six exhausted Grievances, we note that a few of those Grievances were similarly filed during the same time period.  Again, to argue that he was somehow impeded in his ability to file and/or appeal certain grievances due to his confinement status is disingenuous and clearly inimical to the established record.  Accordingly, we recommend **dismissal** of all claims against all Defendants, except for the claims listed above, due to Renelique's failure to exhaust his administrative remedies.  In the alternative, we note that none of Renelique's claims have any merit, and can also be dismissed on other grounds, as explained below.

### 2.  Personal Involvement

As stated above, it is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims, *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

Renelique's Complaint is replete with accusations against various Defendants, purportedly due to their supervisory positions.  *See* Compl. at "Facts" ¶¶ 8-9 (Superintendent David failed to speak with Plaintiff), 10-11 (Deputy Superintendent Eldred failed to address various complaints), 12 (Deputy Superintendent of Security Woods failed to act on Plaintiff's various complaints), & 21

(H.E. Smith, Director of Mental Health at Coxsackie, failed to respond to Plaintiff's various complaints).  The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he:  (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event.  *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted).  Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (defendant may not be held liable simply because he holds a high position of authority).

Plaintiff seemingly seeks to hold Defendants David, Eldred, Woods, and Smith liable for their purported failure to respond to his complaints regarding medical treatment (David, Eldred, and Smith) and employee harassment (Eldred and Woods).  In his Opposition papers, Plaintiff cites one instance where his attorney wrote a letter to Defendant David on July 1, 2002.  Renelique does not claim, however, that the letter went unanswered, nor does he propound the essence of the letter.  In fact, in reviewing Plaintiff's multitudinous and chaotic Exhibits submitted in support of his Opposition, Defendant David did indeed respond to the attorney's inquiry.  Plaintiff also submits multiple letters addressed to him from Defendants Woods and Eldred, all addressing their investigations into his allegations regarding medical care and harassment.  Thus, Plaintiff's own

submissions belie his civil claims.[17]  In any event, the fact that Plaintiff, or Plaintiff's agent, may have written a letter does not automatically render the supervisory official responsible for any constitutional violation.  *See Thomas v. Coombe*, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998) (citations omitted) (ignoring letter is insufficient for personal involvement); *Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) (citations omitted) (the wrong must have been capable of mitigation at the time the supervisory official was apprised thereof); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. Oct. 23, 1998) (citations omitted)  (receiving letters or complaints does not automatically make a supervisor liable for the denial of medical care).  Prison supervisors cannot be deemed personally involved based simply on a response to a complaint.  *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).  Plaintiff protests that he attempted to file grievances against Defendants David, Eldred, Woods, and Smith, but was stymied by Defendant Berlin.  However, again, Plaintiff fails to specify the substantive nature of such grievances and fails to state the dates on which he was thwarted in his attempts to utilize the grievance process.  Furthermore, based upon a review of the Grievance Packets submitted, we find that all of Plaintiff's Grievances were properly investigated. . Since Plaintiff has not implicated Defendants David, Eldred, Woods, and Smith under any of the above supervisory theories, and fails to address these claims in his Opposition to Defendants' Motion, we recommend **granting** Defendants' Motion for Summary Judgment and **dismissing** Defendants David, Eldred, Woods, and Smith from this lawsuit.

### *3.  Eighth Amendment Claim*

Renelique asserts that various Defendants have denied him proper medical care (Kotzin,

---

[17] The inconsistencies, which are interspersed throughout Plaintiff's submissions, are astoundingly characteristic of this Plaintiff, at least with regard to prosecuting the within lawsuit.

Preble, Cole, Loubier, Hotaling, and Cavanaugh) or utilized excessive force against him (Molesky, Sergeant Moore, and Haner).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane, et al.*, 338 F.3d 155, 161 (2d Cir. 2003)). Punishments prohibited by the Eighth Amendment include those that are "grossly disproportionate" to the severity of the crime including unnecessary and wanton inflictions of pain which are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citations omitted); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002).

To prove a violation of the Eighth Amendment, the Second Circuit requires an inmate to show,

> (1) that the deprivation alleged is "objectively sufficiently serious" such that the plaintiff was denied "the minimal civilized measure of life's necessities," and (2) that the defendant official possessed a "sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain."

*Trammell v. Keane*, 338 F.3d at 161 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

With this general standard, the Court turns to Plaintiff's specific claims alleging excessive force and medical treatment.

### a. Excessive Force

In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court clarified the standards for determining whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith

*-29-*

effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6-7 (quoted in *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)). Courts should consider both the objective and subjective component of an alleged violation.

In assessing the objective component, the court should consider the seriousness of the injury, however, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury," thus, the seriousness of the injury is relevant to the inquiry, but does not end it. *Davidson v. Flynn*, 32 F.3d at 29 n.1 (alterations in original) (quoting *Hudson v. McMillian*, 503 U.S. at 4). With regard to the subjective component, the court should consider whether the defendants had a "wanton" state of mind when they were engaging in the alleged misconduct. Further consideration of the circumstances surrounding the alleged misconduct may be warranted. As the Court in *Hudson* explained, "[i]n determining whether the use of force was wanton and unnecessary, it may . . . be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotation marks and citations omitted). The Second Circuit has further elaborated that, in determining whether a defendant acted maliciously, several factors should be examined including, "the extent of the injury and the mental state of the defendant, as well as 'the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.'" *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)).

Plaintiff asserts that on May 22, 2002, Defendants Molesky, Haner, and Sergeant Moore

used excessive force against him.  Specifically, Plaintiff claims that Defendant Molesky struck him in the chest, Defendant Sergeant Moore forcefully took Plaintiff to SHU and, upon arrival, struck Plaintiff in the head, back, and neck, followed by Defendant Haner who grabbed Plaintiff by the chest, hit his head against the wall, and repeatedly punched him in the head until he was knocked unconscious.  In bringing their Motion, we note that Defendants' submission of Plaintiff's Ambulatory Health Record, Dr. Kotzin's Declaration, and Grievance Packet GNE-5472-02 all belie Plaintiff's claims of excessive force.  *See generally* Dkt. No. 58, Attach. ## 5 (Ex. G, Ambulatory Health Record), 12 (GNE-5472-02 Packet), & 23 (Kotzin Decl.).

First, with regard to the objective component of Plaintiff's Eighth Amendment claim, that is the seriousness of the injury suffered, the Court notes that Plaintiff's claim fails at the outset since he cannot point to any concrete injury.  Plaintiff was examined immediately by Dr. Kotzin who saw no signs of assault and noted only one injury present, that being a very small area of swelling on Renelique's brow over his nose, which was deemed to be consistent with Plaintiff falling and bumping his head.  Kotzin determined Renelique was hyperventilating and had him rebreathe through a bag until the condition subsided.  Certainly, had a "sadistic and malicious" beating occurred as Plaintiff described, some significant signs of bruising and/or swelling would be apparent upon examination.  Logically, if Plaintiff's head was repeatedly bashed against the wall, wouldn't some injury beyond a "small area of swelling" be apparent?  Further corroborating Dr. Kotzin's physical examinations is the fact that, Psychologist Markham[18] also made a visit to SHU to counsel Plaintiff and similarly noted that there was no evidence of injury to the head or neck despite Plaintiff's protestations.  Berlin Decl., Ex. 2 at (unnumbered) p. 28.  Notably, Markham was called

---

[18] Markham is not a Defendant in this action.

to SHU by Corrections Counselor Dobbs,[19] who was called to SHU immediately after the hyperventilating incident to calm Renelique down.  *Id*.  Dobbs explains in his statement that Renelique told him Dr. Kotzin tried to kill him by placing a bag on his face and that he was beaten by correction staff.  *Id*. at (unnumbered) p. 21.  When Dobbs explained that Dr. Kotzin was trying to help slow down his breathing, Renelique replied "ok."  *Id*.  Dobbs asserts that he did not see any sign of an assault, particularly, Renelique "did not have any lumps, bumps, or contusions on his head, neck, or face."  *Id*.  Based upon the above, we find that Defendants have met their burden as the moving party.

Once a moving party has met its burden of showing that no triable issues of fact exist, the non-moving party "must come forward with **specific** facts showing that there is a genuine issue for trial."  *Young v. Corbin*, 889 F. Supp. 582, 584 (N.D.N.Y. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986) (emphasis added)).  "A dispute regarding a material fact is genuine 'if evidence is such that a reasonable jury could return a verdict for the non-moving party.'"  *Young*, 889 F. Supp. at 584 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Thus, once the moving party establishes a *prima facie* case demonstrating an absence of a genuine issue of material fact, "the non-moving party must come forward with enough evidence to lead a rational trier of fact to find for the non-moving party, [and t]he motion will not be defeated by a non-movant who raises merely a '**metaphysical doubt**' concerning the facts or who offers only **conjecture or surmise**."  *Young*, at 584 (quoting *Matsushita*, 475 U.S. at 586) (emphasis added).

We find Plaintiff's feeble attempts to create an issue of fact by generally remonstrating the

---

[19] Dobbs is not a Defendant in this action.

falsity of all sworn statements submitted by the Defendants and other non-parties to be unavailing.

Even if we were to believe that an assault took place, we cannot overlook two established facts: (1)

Upon physical examination, Plaintiff did not present any signs of injury consistent with his claims

of use of force; and (2) Plaintiff's claims were thoroughly investigated, including photographic

documentation and six (6) different statements from various employees detailing what took place,

and were found to be unsubstantiated.[20]

Furthermore, Plaintiff's claims against Defendant Molesky are unqualifiedly inconsistent

with Grievance GNE-5472-02, wherein he only asserts Molesky harassed and threatened him, as

well as the fact that Renelique claims the assault took place in SHU, yet, Molesky did not escort

Plaintiff to SHU.  Berlin Decl., Ex. 2 at (unnumbered) p. 26.  In his Affidavit in Opposition to

Defendants' Motion, Plaintiff explains that he asked Molesky for a grievance form which Molesky

perceived to be a threat; Plaintiff does not, however, state that Molesky punched him or struck him.

Pl.'s Aff. at ¶ 20.  Nor does Plaintiff claim in his Memorandum of Law that such force occurred.

*See* Pl.'s Mem. of Law.  Without making any credibility determinations, which this Court

acknowledges is better left to the trier of fact, we find that Defendants have more than met their

burden in moving for summary judgment on the objective prong alone, in that Plaintiff cannot show

that any assault took place.  More to the point, Plaintiff has failed to present genuine and material

issues of fact, exclusive of his unsubstantiated and uncorroborated allegations.  Thus, his Eighth

Amendment claims against Defendants Molesky, Haner, and Moore should be **dismissed**.

---

[20] As a further aside bearing on whether Renelique has presented credible facts sufficient to establish a genuine material fact, which also serves as a demonstrative verification of his dubious veracity, lies in the fact that Plaintiff accused Dr. Kotzin of trying to kill him, which in and of itself would be strong evidence of an Eighth Amendment violation, and yet failed to allege a cause of action for excessive force or even common law assault against Dr. Kotzin.

Furthermore, since it is clearly established from the record that Sergeant Moore, and not CO Moore, was the individual present in SHU, and in light of the fact that no other claims are asserted against CO Moore, we recommend **dismissal** of all claims against CO Moore due to Plaintiff's failure to assert personal involvement.

### b. Medical Care

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The plaintiff must allege conduct that is "'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).  The first prong is an objective standard and considers whether the medical condition is sufficiently serious.  In this Circuit, a medical need is considered serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway I*, 37 F.3d at 66).  Among the relevant factors to be considered are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).  The second prong is a

subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer*, 511 U.S. at 836. This requires "something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*).

Plaintiff asserts that Dr. Kotzin failed to provide medical care for his serious medical conditions and, to some extent, seeks to hold Nurse Preble and Defendant Cavanaugh liable for their failure to schedule appointments for him. Compl. at "Facts" ¶ 15 & 18. Plaintiff also asserts that Defendant Cole denied him "equal treatment" during sick call and such denial was cruel (*Id*. at "Facts" ¶ 9), that Defendant Loubier failed to respond to Plaintiff's complaints about Cavanaugh and Geren and also failed to provide him with a copy of his mental health records (*Id*. at "Facts" ¶¶ 20-21), and Defendant Hotaling refused to give Plaintiff his special diet for approximately two to three days (*Id*. at "Facts" ¶ 31). In his Complaint, Plaintiff summarizes his injuries as follows: head-trauma, right-side paralysis, amnesia seizures, breathing complications, back spine injuries, Hepatitis C, and hemorrhoids. *Id*. at "Facts" ¶ 15. In his Affidavit submitted in Opposition to Defendants' Motion, Plaintiff describes his serious injuries, in addition to the above, as leg injuries requiring ankle and leg braces, Hepatitis AB, and Tourettes Syndrome. And, in his Memorandum of Law in Opposition to Defendants' Motion, Plaintiff claims that his serious medical and psychological problems cause him so much physical pain and mental anguish that he often considers

suicide.[21]  Pl.'s Mem. of Law at p. 4.  In further support of his Opposition, Plaintiff submits an

inordinate amount of medical records, none of which relate to the time line set forth in his

Complaint, therefore, in assessing the Defendants' Motion, the Court will not consider any medical

records generated beyond the time line of April 4, 2002 through September 28, 2002.  In the same

vein, this Court will not consider evidence submitted by Plaintiff which predated the above relevant

dates in the Complaint.

First, as to Defendant Kotzin, Plaintiff asserts that Dr. Kotzin failed to order a back brace as

well as a Magnetic Resonance Imaging (MRI) for Plaintiff's spine, back, neck, and lower abdomen,

and also failed to schedule therapy and neurologist consultations for Plaintiff, which was requested

by Plaintiff for his "stomach operation."  Pl.'s Aff. at ¶ 7.  According to Plaintiff's psychiatric

record, Plaintiff was assessed to suffer from hypochondria.  Specifically, it was determined that

Renelique had a "[p]reoccupation with physical complaints which appear to have no reality-based

etiology, tendency to accuse people of malpractice or intent to harm him when they do not respond

to his physical complaints as he feels they should . . . [and his i]nsight and judgment [is] considered

[to be] impaired regarding perceived medical needs."  Dkt. No. 58, Attach. # 7, Ex. E, Psychiatric

Records at (unnumbered) pp. 3-4.  Treatment notes indicate that, at one consultation, the

preoccupation of the day centered around Renelique's "thought of possibly having Hepatitis C and

is trying to prove that he incurred liver damage when treated by his psychiatrist on Rikers Island for

symptoms of Tourette's syndrome which he claims he does not have."  *Id*. at (unnumbered) p. 19.

Yet, in the within action, Plaintiff appears to attribute the liver damage to medicine prescribed by

---

[21] During a psychiatric evaluation, Plaintiff reportedly stated he never had any suicidal or homicidal ideations.
Dkt. No. 58, Attach. # 7, Ex. E, Psychiatric Record at (unnumbered) p. 5.

Dr. Kotzin.

As supported by Plaintiff's Ambulatory Health Record, Dr. Kotzin personally attended to Plaintiff on thirteen (13) separate occasions in less than a three-month period and, on various occasions, referred Renelique to outside consultation.  Dkt. No. 58, Attach. # 5, Ex. C.  Dr. Kotzin avers that he did not recommend Plaintiff for surgery or other requested treatment because they were not warranted since Plaintiff did not have medical conditions he proclaimed to be suffering from.  Kotzin Decl. at ¶ 4.  However, as indicated in Plaintiff's AHR, when warranted, consultations were directed to be scheduled by Dr. Kotzin, such as on April 9, 2002, when Dr. Kotzin referred Renelique for a psychiatric consultation, and on April 30, 2002, when Dr. Kotzin referred him to a dietician.  *Id.*; Ex. E, AHR at pp. 9-11.  Kotzin's assessment as to Plaintiff's need for certain medical treatments are further supported by treatment notes replete with comments regarding Plaintiff's preoccupation with medical conditions.  *See generally* Psychiatric Record; *see also* Berlin Decl., Ex. 8 at (unnumbered) pp. 3-4 (investigation into Plaintiff's complaints regarding treatment of Tourette's).  In light of the evidence submitted by Defendants, and in consideration of Plaintiff's Opposition thereto, it appears that Plaintiff is indeed preoccupied with the existence of medical conditions, of which this Court has not received any evidence documenting the existence of any of the complications complained of.  Plaintiff's own statements throughout his Complaint and Opposition papers, when compared with his medical records, are often contradictory and nonsensical.  Accordingly, because no evidence of any medical conditions have been submitted, exclusive of his conclusory statements, no assessment needs to be made as to the level of seriousness.  But even if this Court were to, in light of the inconsistencies and ambiguities, construe the objective prong in Plaintiff's favor, his Eighth Amendment claims would still fail because they

would amount to nothing more than disagreements with medical decisions.  On the one hand, Plaintiff argues Kotzin failed to treat his various maladies, and then, in the very same breath, Plaintiff acknowledges that he received treatment, whether delayed or otherwise, but that such treatment was not in accord with what he deems to be proper.  Such contentions are insufficient to assert an Eighth Amendment claim for medical indifference since it is well established that a mere disagreement as to the appropriate course of treatment does not create a constitutional claim.  *Alston v. Howard*, 925 F. Supp. 1034 (S.D.N.Y. 1996).  Furthermore, a prisoner does not have the right to the treatment of his choice.  *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  What is relevant is whether the course of treatment provided was adequate.  *Chance v. Armstrong*, 143 F.3d at 703.  "Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim."  *Id.*  Plaintiff's AHR reflects that he received care for the maladies complained.  Therefore, any Eighth Amendment claims asserted against Dr. Kotzin are recommended **dismissed**

As for Plaintiff's claims against Defendants Preble and Cavanaugh for their failure to schedule appointments or delay in scheduling such appointments, we note that a delay in medical treatment does not necessarily invoke the Eighth Amendment.  Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, such a classification is reserved "for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast-degenerating condition for three days; or delayed major surgery for over two years."  *Freeman v. Stack*, 2000 WL 1459782, at *6 (S.D.N.Y. Sep. 29, 2000) (internal quotation marks omitted).  Only when the official "knows of and disregards an excessive risk to inmate health or safety" will such official be deemed to have been deliberately

indifferent. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Farmer*, 511 U.S. 837). Here, it is clearly established that Plaintiff's perceived medical conditions have no basis, thus, any purported delay or failure in scheduling appointments would not give rise to a constitutional violation. Furthermore, it appears that, in reviewing Plaintiff's medical records, Plaintiff was seen on numerous occasions by medical staff, whether Greene or OMH staff, and since Plaintiff does not specify on which dates he was denied treatment and for what ailments, and for that matter, any consequences flowing therefrom, the Court finds that no constitutional violation can be found.

With regard to the claims asserted against Nurse Cole, according to the AHR, Plaintiff met with Nurse Cole on May 9, 2002, and requested to see a physician; Plaintiff saw a physician the following day. AHR at p. 9. Because Plaintiff fails to elaborate on the "cruel" treatment he received, this Court finds he has not created an issue of material fact with regard to Nurse Cole.[22] And, since Plaintiff's claims against Loubier, regarding unanswered complaints about Geren and Cavanaugh, are derivative of the claims against Cavanaugh, we similarly find that such unsubstantiated claims are insufficient to create a triable issue of material fact.[23] For that matter, it is unclear whether Renelique intends to hold Loubier liable for some supervisory position over Cavanaugh. From the record, the Court cannot fathom how. Loubier's official title is the Health Information Management Administrator for OMH while Cavanaugh holds the position of OMH

---

[22] For the same reason, to the extent Plaintiff intended to assert an Equal Protection claim against Nurse Cole, because such claims are not factually supported at all, they are without merit and should be summarily **dismissed**.

[23] In any event, we note that in his submissions, Plaintiff presents a letter from Corina Loubier, dated May 24, 2002, to Plaintiff, wherein Loubier informs Plaintiff that, in response to his recent request, full access to obtain copies of his clinical record is granted. This letter corroborates both Cavanaugh's and Loubier's statements that Plaintiff submitted a request on May 17, during his meeting with Cavanaugh, which was subsequently forwarded to Loubier for processing. A subsequent letter from Loubier to Renelique, included in Plaintiff's submissions, informs Plaintiff that the records were forwarded to his attorney. Then, Plaintiff includes various letters from a staff attorney at The Legal Aid Society, one of which is dated July 26, 2002, and indicates that his mental health records are enclosed with the letter. Yet again, Plaintiff's own submissions negate his civil claims.

Forensic Unit Chief.  *See* Dkt. No. 58, Attach. ## 24, Kathleen Cavanaugh Decl. at ¶ 1, & 25, Corina Loubier Decl. at ¶ 1.  In reviewing their Declarations, it appears that the supervisory relationship is not as Renelique believes, thus, if Loubier is not in a position to reprimand or provide any of the relief sought in some alleged letters sent to her by Plaintiff about Cavanaugh, then accordingly, she cannot be held liable for a failure to act on such complaints

Finally, as to the claims stated against Defendant Hotaling, Plaintiff has failed to substantiate his claim of denial of his "special diet" and such is not expounded upon in his Opposition papers. The Eighth Amendment does require that prisoners be served "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."  *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1989)); *see also Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (prisoners are guaranteed a nutritionally adequate diet).  Further, the denial of a medically prescribed diet may constitute an Eighth Amendment violation under certain circumstances.  *Robles v. Coughlin*, 725 F.2d at 15-16 (cited in *Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996)); *see also Johnson v. Harris*, 479 F. Supp. 333 (S.D.N.Y. 1979) (denial of medically required diet to a diabetic prisoner violates constitutional rights); *but cf. Ramsey v. Coughlin*, 1 F. Supp. 2d 198 (W.D.N.Y. 1998) (inmate not constitutionally entitled to vegetarian diet).  However, since Plaintiff fails to provide a shred of detail for his claim, this Court is unable to assess whether any material facts have been raised.  In light of the above analysis, we further recommend **dismissal** of Plaintiff's Eighth Amendment claims against Defendants Cavanaugh, Cole, Loubier, and Hotaling.

### *4. Retaliation Claims*

Plaintiff asserts that Defendants Berlin, Cole, Lemay, Lubinski, Peterson, Overbaugh, and Robbiani, on different occasions and for various reasons, either threatened or harassed Plaintiff. Only Berlin, Cole, and Lubinski are alleged to have acted in a retaliatory manner.

With regard to retaliation claims, the Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to harassment in retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988). To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)); *see also Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002) (alleging false disciplinary report); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997) (alleging retaliatory transfers). The Second Circuit has noted that retaliation claims are prone to abuse, therefore courts should examine such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d at 491 ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

In addressing the first prong of the retaliation analysis, we note that many of Plaintiff's claims fall miles short of retaliation in that he has not even asserted he was engaged in

constitutionally protected activity. Second, in addressing the second and third prongs of the analysis, we note that, fatal to all his claims is the fact that Renelique fails to establish a causal connection between certain unspecified grievances he filed and any adverse action taken by any of the Defendants. To satisfy the second prong, a prisoner mus present evidence inferring that Defendants acted with an improper motive. Such evidence includes: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary record; (3) plaintiff's vindication at his disciplinary hearing; and (4) defendants' statements regarding their motive for the discipline. *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995). In satisfying the causal connection requirement, also known as temporal proximity, the allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Dawes v. Walker*, 239 F.3d at 492 (internal quotation marks and citations omitted) (cited in *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d at 353 (citing *Dawes v. Walker*, 239 F.3d at 493). Otherwise, the retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d at 493.

Turning first to the claims against Cole, Lubinski, and Berlin, wherein Plaintiff uses the magic word "retaliation," we note that none of these claims meet the test set by the Second Circuit.

Plaintiff alleges Nurse Cole denied him medical care on some unspecified date in May and that such denial of care was retaliatory and cruel. While Renelique fails to assert the constitutional activity which prompted such retaliation, we note that, as stated above, the AHR indicates that he saw Nurse Cole on May 9, 2002, wherein he requested to see a physician; Plaintiff was seen by Dr.

Kotzin the following day.  Dkt. No. 58, Ex. C, AHR at p. 9; Kotzin Decl. at ¶ 3.

Similarly, as to Defendant Lubinski, Plaintiff claims he threatened and harassed Plaintiff in retaliation for grievances Plaintiff sent to state officials and also moved Plaintiff to another cell without a window.  While the filing of grievances is certainly a constitutionally protected activity, Plaintiff fails to allege when such grievances were filed to allow this Court to assess the temporal proximity of the alleged retaliatory cell change.  Nor has Plaintiff indicated how Lubinski would even be aware of the purported grievances Plaintiff submitted to state officials to allow the Court to assess Lubinski's motivation to threaten, harass, and move Plaintiff.  As Defendants highlight, Plaintiff presents no evidence that he had breathing complications and both the AHR and Dr. Kotzin's Declaration are devoid of any indication that such medical condition existed.

With regard to Defendant Berlin, Plaintiff asserts that Berlin failed to investigate numerous complaints or allegations he submitted on April 10, 17, 18, 23, May 5, June 3, 7, and July 9. Further, Plaintiff claims on April 11 through May 8, Berlin refused to call Renelique to the grievance hearings.  Such actions were purportedly taken because Renelique files "too many grievances."   Plaintiff does not state that by his complaints or allegations he was attempting to initiate the formal/informal grievance process and that Berlin refused to file them.  And, without knowing the nature of the allegations, we have no way of assessing whether Berlin properly "investigated" them or, if a grievance was not filed, whether a duty to investigate even arose. Certainly, if Renelique is making oral complaints to Berlin, Berlin cannot be held responsible for allegedly failing to investigate when there is a formal/informal grievance process in place at the facility, to which Renelique is conspicuously familiar, as evidenced by the numerous times he availed himself of those processes.  Dkt. No. 58, Attach. # 4, Ex. B, Grievance History Sheet (listing

grievances filed by Renelique from 1999 to 2003 at various correctional facilities, including, *inter alia*, Franklin, Greene, and Great Meadow).  It is entirely possible that some of the "allegations" made to Berlin were already fully addressed in the grievance process and Renelique simply expressed a dissatisfaction with the result.  Without such knowledge, it is virtually impossible for the Court to assess whether an issue of fact is raised since Plaintiff's claims appear to be nothing more than conclusory.  Furthermore, none of the Grievance Packets submitted by Berlin, representing the twelve Grievances Renelique filed while at Greene, indicate that the grievant (Renelique) failed to attend any hearings or otherwise participate in the investigation.  In fact, virtually all Grievances filed, especially those alleging employee harassment, were fully investigated and such investigations always included an interview of Plaintiff.[24]  *See generally* Berlin Decl., Exs. 1-12.

　　We now turn to Plaintiff's claims against Defendants Lemay, Peterson, Overbaugh, and Robbiani regarding threats and/or harassment.  A claim brought under § 1983 is "not designed to rectify harassment or verbal abuse." *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)); *Aziz Zarif Shabazz v. Picco*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (ordinarily, a claim for verbal harassment is not actionable under § 1983.  Moreover, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz*, 994 F. Supp. at 474 (cited in *Garrett v. Reynolds*, 2003 WL 22299359, at * 4

---

[24] To the extent Renelique attempts to raise a due process violation against Berlin for failing to call him to grievance hearings, we note that such claims should similarly be **dismissed**.

(N.D.N.Y. Oct. 7, 2003)).  Accordingly, insulting or disrespectful comments towards an inmate do not rise to the level of retaliation and thus is not a constitutional violation.  *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001) (calling inmate a "rat" is not a constitutional violation).

Plaintiff alleges Officer Lemay threatened, harassed, and moved Plaintiff to another housing cell because Lemay did not like the clicking sound in Plaintiff's throat.  But, Plaintiff fails to explain the nature of such threats and what, if any, protected activity he was engaged in that would give rise to retaliatory action.

As to Defendant Peterson, Plaintiff claims that Peterson threatened and harassed him when he returned from the messhall after the other inmates.  However, again, Plaintiff does not provide the Court with any activity he engaged in that would provide the basis for any retaliation, nor for that matter has Plaintiff alleged any actions taken by Peterson against Plaintiff, *i.e.*, the issuing of a misbehavior report.

As to Defendants Robbiani and Overbaugh, Plaintiff claims he was the subject of threats, harassment, and perhaps even ridicule, however, as noted above, such claims are not actionable under § 1983.

In light of the above analysis, it is recommended that Plaintiff's retaliation claims against Defendants Berlin, Cole, Lemay, Lubinski, Peterson, Overbaugh, and Robbiani be **dismissed**.

### 5. *Due Process Claims*

Lastly, we address claims asserted, seemingly under the Due Process Clause of the Fourteenth Amendment, against Defendants Wilson, Holt, Hotaling, and Warner.  Plaintiff makes the following claims against these Defendants: (1) Clark Wilson, Deputy Superintendent of Programs at Greene, denied Renelique the use of the "legal advance copy" on May 31, June 5, and

18 (Compl. at "Facts" ¶ 13); (2) Officer Wayne Holt denied Renelique, on some unspecified date in May, notary service and advance copies of legal documents (Compl. at "Facts" ¶ 23); (3) Officer Hotaling, on unspecified dates in May and June, obstructed Renelique from attending law library call-out (Compl. at "Facts" ¶ 31); and (4) Diane Warner, Inmate Records Coordinator at Greene, on June 13, declined to release the names of various individuals which Plaintiff asked for through a Freedom of Information Law (FOIL) request (Compl. at "Facts" ¶ 33).

We construe all of the above claims to be asserting some level of interference with Renelique's access to the courts. Supreme Court precedence dictates that prisoners have "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). A component of this right necessarily entails that "indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Id*. at 824-25. However, the Supreme Court has recognized that prisoners do not have "an abstract, free-standing right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343 (1996). Instead, "meaningful access to the courts is the touchstone." *Id.* (quoting *Bounds*, 430 U.S. at 823). Accordingly, a prisoner alleging a *Bounds* violation must show "actual injury," *i.e.*, "by demonstrating that he has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality." *Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001) (citing *Lewis*, 518 U.S. at 351); *see also Lewis v. Casey*, 518 U.S. at 349).

Nowhere in <u>any</u> of Plaintiff's allegations does he specify an actual injury suffered with regard to a pending legal action or even in initiating an action. Thus, Plaintiff's claims against Defendants Wilson, Holt, Hotaling, and Warner, for allegedly obstructing his access to the courts should be **dismissed**.

### 6. *Americans With Disabilities Claim*

In his Complaint, Plaintiff states, in passing fashion, that he brings a cause of action

pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131.  Title II of the ADA

concerns "Equal Opportunity for Individuals with Disabilities – Public Services."  The ADA states

that, "no qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity, or

be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The Supreme Court has

held this statute applicable to inmates in state prisons.  *Pa. Dep't of Corr. v. Yesley*, 524 U.S. 206

(1998).  Before addressing the substance of Plaintiff's feeble one-sentence reference to this statute,

we note the statute applies to individuals with disabilities, in that,

> [t]he term "qualified individual with a disability" means an individual with a disability
> who, with or without reasonable modifications to rules, policies, or practices, the
> removal of architectural, communication, or transportation barriers, or the provision of
> auxiliary aids and services, meets the essential eligibility requirements for the receipt of
> services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131

This Court has already detailed, *ad nauseam*, Plaintiff's failure to establish any medical condition to

which he purports to suffer from.  Similarly, we cannot fathom how the ADA would apply to him.

Perhaps Plaintiff's claim is premised upon his personal supposition that he is disabled and

reasonable accommodations should have been made with regard to his trips to the messhall.  Yet,

the record clearly shows that no medical condition was present to justify even the issuance of a

medical pass.  Aside from this instance of purported discrimination, Plaintiff remarks, again in

passing, that he was denied membership to the Alcohol and Substance Abuse Treatment (ASAT)

Program.  *See generally* N.Y. COMP. CODES R. & REGS. tit. 7, §§ 1950-52.  However, he does not

explain how his purported "disabilities" played any role in the denial of membership, nor for that matter, has he even alleged his entitlement to inclusion in ASAT.  *See id.* (noting that to be eligible, an inmate must be within twelve to twenty-four months "to earliest release," must have a documented history of drug and/or alcohol abuse, and, *inter alia*, must be in good health and able to participate actively in the program).  *Id.* at § 1950.3(a).  And, as with all other claims, Plaintiff fails to specify the dates to which he sought inclusion and was denied access to ASAT.  Thus, we find Plaintiff's reference to the ADA to be wholly conclusory and should be summarily **dismissed**.

### 7.  *Qualified Immunity*

Defendants raise the affirmative defense of qualified immunity as an alternate basis for granting their Motion.  In light of the above analysis wherein this Court has assessed no constitutional violations occurred, it is unnecessary for us to consider this affirmative defense. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

### 7.  *State Law Claims*

Plaintiff alleges state law claims for assault, battery, and emotional distress.  Since we recommend the federal claims be **dismissed** from this action, we also recommend **dismissal** of the pendent state law claims pursuant to 28 U.S.C. § 1367, which authorizes a federal court to decline to exercise supplemental jurisdiction over a state claim if all of the claims over which the court had original jurisdiction were dismissed.  28 U.S.C. § 1367(c)(3).

### III.  CONCLUSION

**WHEREFORE**, it is hereby

*-48-*

**RECOMMENDED**, that Defendants Geren and Rosenthal be **dismissed** from this action, **without prejudice**, in accordance with FED. R. CIV. P. 4(m), due to Plaintiff's failure to timely effectuate service, or in the alternative, that Defendant Rosenthal be **dismissed** from this action, **with prejudice**, in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii), due to Plaintiff's failure to properly state a cause of action; and it is further

**RECOMMENDED**, that, to the extent Plaintiff does not seek prospective relief, the claims asserted against the Defendants in their official capacities should be **dismissed** pursuant to the Eleventh Amendment; and it is further

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 58) be **granted** and Plaintiff's entire Complaint, except for the claims asserted against Defendants Kotzin, Cavanaugh, Loubier, Smith, Sergeant Moore, Haner, and Peterson, be **dismissed without prejudice** due to Plaintiff's failure to exhaust his administrative remedies; and it is further

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 58) be **granted** and Plaintiff's claims against Defendants David, Eldred, Woods, Smith, and C.O. Moore be **dismissed with prejudice as frivolous**, in light of Plaintiff's failure to allege personal involvement of these Defendants; and it is further

**RECOMMENDED**, that, in the alternative, and to the extent not covered in the above recommendations, Defendants' Motion for Summary Judgment (Dkt. No. 58) be **granted** and Plaintiff's entire Complaint be **dismissed**; and it is further

**RECOMMENDED**, that Plaintiff's claims under the American with Disabilities Act be **dismissed**; and it is further

**RECOMMENDED**, that, if the above recommendations are accepted and the Court

dismisses all claims of original jurisdiction, the Court should decline to exercise supplemental jurisdiction over the state claims; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report to the **U.S. DISTRICT  JUDGE** assigned to this case.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT TO THE U.S. DISTRICT JUDGE WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Sec'y of Health and Human Servs.* 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

SO ORDERED

Dated: September 30, 2005
      Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge